IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Justin Archie, #315395, | ) | Civil Action No. 8:08-2381-HFF-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Investigator McDaniels, Richland | ) | |
| County Sheriff Department; Detention | ) | |
| Officer Smith, Alvin S. Glen Detention | ) | |
| Center; Sheriff of Richland County | ) | |
| Sheriff, aka L.Lott | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendant's motion for summary judgment. [Doc. 26.] The plaintiff alleges that the defendant unconstitutionally photographed and assaulted him. The undersigned originally recommended dismissal for the plaintiff's apparent failure to exhaust his administrative remedies. [Doc. 39.] The plaintiff subsequently filed additional proof of exhaustion. [Doc. 40.] As a result, the district court remanded the matter for additional consideration.[1] [Doc. 42.]

---

[1] The defendants have offered evidence that the plaintiff's newly submitted grievance documentation is not reliable and was never properly filed. (Harrell Aff. ¶ 13-15.) The plaintiff has offered some argument in defense. [Doc. 44.] Ultimately, the Court believes that issues of fact likely

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## BACKGROUND

At all times relevant to this case, the plaintiff was a pretrial detainee at the Alvin S. Glenn Detention Center ("ASGDC"). On October 31, 2007, he was photographed by defendant Walter McDaniels, an investigator for the Richland County Sheriff's Department. (McDaniels Aff. ¶ 1, 4.) McDaniels escorted the plaintiff to the parking garage area for photographing. *Id.* ¶ 7. The plaintiff had a Mr. Planter's Peanut Man tattoo on his arm matching the description given of a robbery suspect. (McDaniels ¶ 4.)

McDaniel attempted to pull up the plaintiff's sleeve for photographing but the plaintiff verbally refused and further pulled back down his shirt sleeve. (Compl. at 3-4; McDaniel Aff. ¶ 8.) McDaniel warned the plaintiff that force would be used if he continued to be uncooperative. (Compl. at 3; McDaniel Aff. ¶ 9.) The plaintiff again refused and McDaniel used a weight displacement technique to take the plaintiff to the ground. (Compl. at 3-4; McDaniel Aff. ¶ 10.) McDaniel secured the plaintiff and photographed the tattoo on his arm.

---

exist as to the matter. Because the Court recommends dismissal on the merits of the plaintiff's claims, however, it need not reach any actual determination.

The plaintiff suffered cuts on his wrist and left hand. (Compl. at 4; McDaniels ¶ 11.)

## LAW AND ANALYSIS

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56©. The party seeking

3

summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

### I. Photograph Claims

The plaintiff complains regarding the propriety of the photographs taken. Whether considered in light of the Fourth, Fifth, or Sixth Amendments, the undersigned finds no validity to his claims.

In regards to the Fourth Amendment, the plaintiff contends that the taking of the photograph was some type of illegal search. In the context of search and seizure jurisprudence, there is no *per se* rule. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 572 (8th Cir. 2009). Rather, the propriety of the physical search and examination of a detainee requires balancing the factors set out in *Bell v. Wolfish*, 441 U.S. 520 (1979).

*See Id.* Under *Bell*, courts must consider (1) the justification for initiating the search; (2) the scope of the particular intrusion; (3) the place in which the search is conducted; and (4) the manner in which it is conducted. *Bell*, 441 U.S. at 559. These factors are used to balance the need for a particular search with the rights of the individual being searched. *Id.*

As to the first consideration, "there are legitimate law-enforcement purposes served by photographing the tattoos of an arrestee for use in identification." *Schmidt*, 557 F.3d at 572; *United States v. Blasingame*, 219 Fed. Appx. 934, 944-46 (11th Cir.) (affirming introduction of photograph of defendant's torso taken after arrest to document tattoo and other identifying marks); *Johnson v. Florell*, 2006 WL 3392784, at *5 (D. Minn. Oct.19, 2006) (finding "no inherent constitutional violation in lifting a tee shirt or holding up shirt sleeves to photograph tattoos" for identification purposes). The defendants had specific information that the suspect in a robbery had a Planter's Mr. Peanut Man tattoo on his arm. (McDaniels Aff. ¶ 4.) The defendants had information that the plaintiff had such a tattoo. *Id.* McDaniels was instructed to take a photograph of the plaintiff. *Id.* ¶ 3. The tattoo certainly seems as though it would be a highly probative investigatory identifier, for its apparent rarity. The defendants have a further interest in the general identification of those in their custody. *See Schmidt*, 557 F.3d at 572. For all these reasons, the defendants justification was fairly high.

The scope of this search was neither invasive nor broader than was necessary. The plaintiff was only required to expose his right forearm. Strip searches of varying degree have been upheld. *See Schmidt*, 557 F.3d at 573-74 (survey of cases). The plaintiff does not contend that he was required to disrobe to a humiliating or uncomfortable extent.

As to place of the search, the photographs were taken in the parking area. And although the plaintiff contests the authority of the defendants to take him to that location, he does not contend that the parking area was unnecessarily exposing or public. In fact, he complains that other officers should have been present. (Pl. Resp. Summ. J. at 2.) The place of the search was in fact relatively private.

Finally, concerning the manner of the search, it is true that force was ultimately used. (McDaniels Aff. ¶ 10.) The force was necessitated by the plaintiff's own, admitted, resistence. That force will be more specifically considered in light of the Eighth Amendment strictures below, but in the context of the *Bell* analysis, it seems that the force was commensurate with the degree of the plaintiff's resistance. It is undisputed that the plaintiff verbally refused to allow the defendant McDaniels to photograph his arm and actually pulled his shirt sleeve down after attempts by McDaniels to pull the sleeve up. (Compl. at 3; McDaniels Aff. ¶ 8.) It is further undisputed that the plaintiff was warned that he should be compliant. (Compl. at 3; McDaniels Aff. ¶ 9.) When the plaintiff continued to refuse, he was taken down by defendant McDaniel and handcuffed. (McDaniels Aff. ¶ 10.) The force does not seem disproportionate, and none of it would

have been necessary to conduct the search, of course, if the plaintiff had been cooperative.

The plaintiff's summary contentions that a warrant was necessary or that the photographs were taken at a late hour are of no moment. *See Schmidt*, 557 F.3d at 572-73. As a detainee, in custody, the photographs were permissible and related to legitimate law-enforcement purposes. *Id*.

Consideration of the *Bell* factors leads the Court to believe that the examination of the plaintiff's physical person was reasonable under the circumstances. No Fourth Amendment violation occurred.

The plaintiff also contends that the involuntary submission to photographing constitutes a violation of the Self-Incrimination Clause of the Fifth Amendment, made applicable to states through the Fourteenth Amendment. That Clause provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination is not violated by the taking of a photograph of a detainee, after arrest, because the Supreme Court has "long held that the privilege does not protect a suspect from being compelled by the State to produce 'real or physical evidence.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Schmerber v. California*, 384 U.S. 757, 764 (1966)); *see Pugh v. MacFarland* 2005 WL 3544304, at *3 (D.N.J. December 28, 2005). As the Supreme Court has explained, "[t]he prohibition of compelling a man in a criminal court to be witness against

himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Holt v. United States*, 218 U.S. 245, 252-53 (1910). Significantly, the Supreme Court noted in *Schmerber* that the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber*, 384 U.S. at 764; *see also United States v. Wade*, 388 U.S. 218, 222 (1967) ("We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance"). Under the circumstances, therefore, the photographing of the plaintiff by defendant McDaniels did not violate his privilege against self-incrimination.[2]

Additionally, the plaintiff's Sixth Amendment claim must fail. The police do not violate a detainee's Sixth Amendment right to counsel by taking his photograph prior to indictment or formal charge. *See Pugh*, 2005 WL 3544304, at *3 (citing *Kirby v. Illinois*,

---

[2] The Court is unaware as to why McDaniels status as a Sheriff's investigator would alter this conclusion. Even if there was some procedural error in McDaniels presence, it does not seem of constitutional import. As discussed, McDaniels physical person is fair game in any prosecution. The Court is not blind to the issue implicated, though – that a sheriff photographed a detainee, not directly in his physical custody and not for any booking purposes, but as an investigative matter. But, as discussed, the plaintiff, once in custody, had no particular right to decline to "exhibit his person" for a legitimate law enforcement reason. *Wade*, 388 U.S. at 222. Moreover, there is no evidence or argument of record that the plaintiff was not rightly considered in the custodial jurisdiction of the Sheriff's department such that access to him by a Sheriff's investigator was permissible. In fact defendant Smith has averred that he did not "have the authority to refuse to allow the Sheriff's Deputy to take an inmate out of the detention center to the Sallyport area." (Smith Aff. ¶ 6.)

406 U.S. 682 (1972) (holding that Sixth Amendment right to counsel not implicated during show-up identification at police station)).

It appears that the plaintiff also contends that it was improper for the subsequent photo identification lineup to be performed outside the presence of him and his attorney. The Sixth Amendment "does not grant an accused the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *U.S. v. Ash*, 413 U.S. 300, 321(1973).

Accordingly, the plaintiff has no basis in the 5th or 6th Amendments to contest the photographs. For all of these reasons, therefore, the Court would recommend dismissal of all of the plaintiff's claims related to the photographing of his tattoo.

**II.**     **Excessive Force Claim**

The plaintiff also contends that the defendants violated his constitutional protection to be free from cruel and unusual punishment, when defendant McDaniels allegedly used excessive force against him. (Compl. at 4.) It is well established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Pretrial detainees, like the plaintiff, may state a similar claim pursuant to the Fourteenth Amendment. *See Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir. 1988). To state an excessive force claim, a detainee must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with

a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the plaintiff to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id.* at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

### A. Subjective Component

To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that

was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

Application of these factors leads inexorably to a conclusion that the force used was not subjectively wanton. The facts are not in dispute. The plaintiff readily concedes that he repeatedly *refused* to allow defendant McDaniel to photograph his arm, to the extent he actually physically resisted McDaniel's efforts by pulling down his shirt sleeve. (Compl. at 3.) The plaintiff admits that McDaniel warned him to cooperate (although more harshly than McDaniel represents) prior to using force. *Id.*; (McDaniel Aff. ¶ 9.) The plaintiff still refused. *Id.* The parties further agree that the force used included the plaintiff being physically taken to the ground; McDaniel placing a knee on the plaintiff to prohibit the plaintiff from continuing to struggle; and the application of handcuffs. (Compl. at 4; McDaniel Aff. ¶ 10.)

The need, therefore, is clear. It is well-established that force may be used to secure the cooperation of a noncompliant detainee or prisoner. *See Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996) (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the

luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

Moreover, as to the second *Whitley* factor, the force used seems in nearly exact proportion to what was required to achieve compliance. In fact, McDaniels avers that upon the initial take down he attempted to photograph the plaintiff's arm but was then required to apply some additional force as the plaintiff continued to struggle. (McDaniels Aff. ¶ 10.) The plaintiff does not dispute the representation. But, even if he did, the total universe of force used seems appropriately related to the objective of securing the photograph, which McDaniel was entitled to take but that the plaintiff refused to allow.

Concerning the third factor, the plaintiff posed no physical threat to himself, McDaniels, or others. But, the force was not so severe as to suggest that McDaniels somehow believed great harm was posed by his noncompliance. McDaniel, however, was certainly not under any obligation to continue to politely pull up the plaintiff's shirt sleeve as the plaintiff defiantly pulled it back down.

Lastly, McDaniel reasonably attempted to diminish the force used. The parties agree that McDaniel warned the plaintiff that force would be used. McDaniel further avers that he employed a weight displacement technique in such a way as to attempt to avoid injury when the plaintiff hit the ground. (McDaniel Aff. ¶ 10.) The plaintiff's utter lack of injury bears witness to the credibility of this representation, which is not disputed by the plaintiff.

The *Whitley* factors, therefore, almost unanimously weigh in favor of the Court concluding that the actions of McDaniel do not reveal an intent to hurt or punish.

**B.** **Objective Component**

As to the objective component of the excessive force test, an injury is "sufficiently serious" if it rises above the level of *de minimis* harm. *Hudson*, 503 U.S. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). *See also Williams,* 77 F.3d at 761. While it is true that there may be "highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain," this case does not involve circumstances where either the force used was "repugnant to the conscience of mankind," or the pain, described, can properly be said to constitute more than *de minimis* injury. *Norman*, 25 F.3d at 1264.

The plaintiff here complains that he suffered injuries to his wrist as well as his left hand. (Compl. at 4.) The defendants concede that the plaintiff suffered a few minor abrasions on his hands as a result of the pressure of the handcuffs on the plaintiff's wrists and from McDaniel's knee on the plaintiff's forearm. (McDaniels Aff. ¶ 11, Ex. A.)

The plaintiff has put forward no evidence of his own as to injury. In fact, his response to summary judgment is all but silent as to injury. (Cf. Pl. Resp. Summ. J. at 13.)

It has been held that allegations, such as the plaintiff's, showing only pushing or shoving and temporary pain, bruising, and/or swelling, but not permanent injury, are insufficient to support an excessive force claim for damages under 42 U.S.C. § 1983. *See Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006) (relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries and insufficient to support claim of excessive force); *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir.1999) (finding claim that handcuffs were too tight and that an officer pushed plaintiff's legs as she got into the police car did not support claim); *Norman v. Taylor*, 25 F.3d 1259, 1263-64 (4th Cir.1994) (finding swollen thumb was *de minimis* ); *see also Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir.1998) ("temporary swelling and irritation is precisely the type of injury this Court considers de minimis" ); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir.1998) (bruises, swelling, and a loosened tooth constituted *de minimis* injury). In light of these authorities, the record here does not reveal injury that could be characterized as anything other than *de minimis*.[3]

---

[3] Defendant Ronnie Smith is a detention officer at ASGDC. The plaintiff contends that Smith was indifferent to the fact that McDaniels was unlawfully taking photographs and would be physically abusive towards the plaintiff. But, as discussed above, because there was no excessive risk of harm, potentially or actually, to the plaintiff, defendant Smith could not have been deliberately indifferent to any such danger. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There is no evidence that defendant Smith was aware that McDaniels would have needed to use impermissible force against the plaintiff. The plaintiff contends that the fact that Smith warned McDaniels that the plaintiff would be uncooperative is evidence that Smith was conscious of the possibility of an

### III. Transport Claim

Lastly, the plaintiff argues that to photograph him the defendants improperly transported him to an unauthorized area, in the absence of a proper transport order. The plaintiff concedes, however, that he is unaware of the policies and procedures related to the defendants' ability to move him. (Pl. Resp. Summ. J. at 2-3.) Regardless, the undisputed evidence of record is that McDaniel took the plaintiff to the Sallyport or garage area of the Alvin S. Glenn Detention Center. (McDaniel Aff. ¶ 7.) It is further uncontested that the garage area is part of the detention center grounds. *Id.* ¶ 6, 7. The plaintiff has made no evidentiary showing to the contrary. The Court has not been made aware of any policy or procedure which would prohibit such conduct. Even if there were, no argument has been made as to how such a procedural violation would achieve constitutional dimension. Accordingly, any claim as to the plaintiff's transport should fail.

### IV. State Law Claims

Having dismissed the plaintiff's federal claimd, the Court declines to exercise jurisdiction over the whatever state law claims the plaintiff may have against either of the defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines

---

altercation and the impropriety of McDaniels actions. But this is knowledge of the risk of *excessive* harm. At best, this might be suggestive that Smith was conscious that McDaniels might have to employ *constitutionally permissible* harm in the event that the plaintiff was predictably noncompliant. Accordingly, any claim for deliberate indifference against the plaintiff must fail.

to exercise jurisdiction over the remaining state law claims.")  Thus, the state law claims, if any, are dismissed *without prejudice*.

## **CONCLUSION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment [Doc. 26] should be GRANTED.

IT IS SO RECOMMENDED.

                              s/Bruce H. Hendricks
                              United States Magistrate Judge

August 11, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).